UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMILY MIRANDA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| V. | : | |
| WESTOVER SCHOOL, INC. | : | |
| Defendant. | : | JANUARY 28, 2020 |

## COMPLAINT

**I.   Jurisdiction and Venue**

1. Jurisdiction obtains pursuant to 28 U.S.C. § 1332(a).

2. The plaintiff resides in and is a citizen of the District of Columbia.

3. Defendant Westover School, Inc. is a non-stock corporation formed pursuant to the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

4. The amount in controversy vastly exceeds the statutorily required $75,000.00, exclusive of interest and costs.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(a) in that the defendant resides in this District and a substantial part of the events, acts and omissions giving rise to the plaintiff's claims occurred in this District.

6. The defendant's acts and omissions alleged herein occurred while the plaintiff was a minor, the action is brought within 30 years from the date the plaintiff attained the age of majority, and this action seeks damages caused by sexual abuse, sexual exploitation and sexual assault; accordingly, this Complaint is timely filed pursuant to Connecticut General Statutes § 52-577d.

## II.     Parties

7. Westover School is an exclusive private boarding and day school for girls acting through and bound by the acts and omissions of its administrators and faculty.

8. Emily Miranda attended Westover School from the fall of 2003 to the spring of 2007, when she was 14-17 years old.

9. Prior to and during the time Emily attended Westover, the school was responsible for the health and wellbeing of the school's students and the supervision, discipline, hiring and firing of the school's teachers and staff.

## III.    First Claim for Relief (Negligence):

10. Prior to and during the time Emily attended Westover, the school employed a man named Allen Fitzsimmons as a teacher, assistant athletic director, and squash coach, and it provided him an office and an apartment on the school campus.

11. Prior to and during Emily's attendance at Westover, the defendant knew and should have known that Fitzsimmons was a sexual predator and child molester who desired and preyed on minor female students in the school's care and custody.

12. During his first year at Westover, Fitzsimmons openly dated a minor student.

13. Not long after being hired, Fitzsimmons had a sexual relationship with another minor girl in the 11th grade.

14. Prior to and during Emily's attendance at Westover, Connecticut law imposed upon the school a mandatory duty to report to child welfare authorities if there was reasonable cause to believe that one or more students were being or had been sexually abused by an employee of the school.

15. Prior to and during Emily's attendance at Westover, Connecticut law imposed upon the school a mandatory duty to report to child welfare authorities if there was reasonable cause to believe that one or more students were in danger of being sexually abused by an employee of the school, even if there was no reasonable cause to suspect that any such abuse had actually occurred.

16. Despite reasonable cause to believe that Fitzsimmons had sexually abused or was in danger of sexually abusing one or more girls, Westover failed and refused to report Fitzsimmons to child welfare authorities.

17. Despite reasonable cause to believe that Fitzsimmons had sexually abused and/or was in danger of sexually abusing one or more girls, Westover failed and refused to suspend or terminate Fitzsimmons's employment at the school, or to warn girls and their families of the risk of harm posed by Fitzsimmons, or to take any other steps to protect girls from Fitzsimmons' abuse.

18. At the time Emily attended Westover, the school had a duty to ensure her safety and to protect her from sexual abuse by (a) hiring, training, and supervising staff

who would not sexually abuse, and would not allow the sexual abuse of, students, (b) suspending and terminating staff who posed a danger of sexually abusing students, and (c) enforcing policies and practices to protect students from sexual abuse by staff.

19.     Westover breached its duties to hire, train, supervise and discipline such employees and to enforce such policies.

20.     As a direct and proximate result of Westover's failures and refusals to comply with its duties to protect and warn vulnerable minor female students in its care and custody, Fitzsimmons sexually abused, assaulted and exploited Emily Miranda while she was a student at the school.

21.     Beginning when Emily was a 15 year-old sophomore at Westover, Fitzsimmons began controlling, manipulating and preying upon her.

22.     Fitzsimmons created a falsely intimate and sexualized relationship between them.

23.     Fitzsimmons became Emily's faculty advisor, her coach, and her Advanced Placement teacher; they spent two-three hours together nearly every day.

24.     Fitzsimmons groomed Emily to believe that he was a trusted confidante, learned intimate details about her, and created in her mind a false and controlling emotional bond that was wholly designed to result in sexual contact with her for his own enjoyment.

25.     On hundreds of occasions while on the Westover campus, Fitzsimmons kissed, hugged and touched Emily.

26. On three occasions during Emily's junior and senior years, when she was 16 and 17 years old, Fitzsimmons groped her, inserted his fingers in her vagina, and forced her to masturbate him in his office on the Westover campus.

27. Fitzsimmons' sexual assaults and his sexually abusive relationship with Emily was widely-known to Westover students and faculty.

28. Other Westover students told their faculty advisors about Fitzsimmons' abuse of Emily.

29. Three Westover employees referred to Emily as Fitzsimmons' "girlfriend".

30. The mother of one of Emily's classmates told the Westover Dean of Students about Fitzsimmons' abuse.

31. The Dean did nothing except tell Fitzsimmons about the report, after which Fitzsimmons ordered Emily not to reveal the abuse.

32. Fitzsimmons exercised total, all-consuming emotional control over Emily.

33. Fitzsimmons – an adult man, teacher and faculty advisor – was Emily's first crush, the first person she ever kissed, and the first person with whom she had any kind of intimate or sexual experience.

34. As a result of Fitzsimmons' control over her, Emily became a person she never was, lost all of her friends, became isolated from the people and the world around her, and suffered intense pain and loneliness.

35. Fitzsimmons's emotional and sexual abuse, assaults, exploitation and manipulation of Emily continued unabated during her junior and senior years.

36. In 2012, Fitzsimmons was convicted of first-degree reckless endangerment for his sexual assaults on Emily.

37. In 2019, Westover Head of School Julie Faulstich wrote to the Westover Community that the school had reviewed information "about past allegations" of abuse, had "determined that it is necessary to be forthright about the past, and to address it head-on", and wanted to "acknowledge and apologize for past misconduct".

38. The Head of School stated that "there may be alumnae suffering in silence and allegations that may not have been addressed".

39. In fact, Emily Miranda has been suffering in silence for years, and Fitzsimmons' sexual abuse of her and the school's responsibility for it have never been addressed.

40. As a result of Fitzsimmons' sexual abuse, and of Westover's negligent acts and omissions that made the abuse possible, Emily's ability to engage in normal life activities has been permanently impaired and she has been and will be unable to lead and enjoy a normal life.

41. As a result of the abuse, Emily's performance in school suffered catastrophically: prior to Fitzsimmons' abuse, she had been a successful and accomplished student, but in college, she fell into a deep depression, considered killing herself almost all the time, was unable to attend and focus on her classes, and had such poor grades that she was put on academic probation and nearly expelled.

42. The harm inflicted on Emily while she was a minor student at Westover has severely interfered with her ability to engage in lasting meaningful relationships; her ability to form and maintain intimate physical, sexual and emotional connections with others has been irreparably damaged.

43. Emily has suffered, and will continue over the course of her lifetime to suffer, mental, physical and emotional injuries, some or all of which are permanent, including severe emotional distress, pain and anguish, loneliness, depression, anxiety, feelings of abandonment, humiliation, embarrassment, panic, sexual dysfunction, hyper-vigilance, lack of ability to trust, shame, low self-esteem, self-loathing, nightmares, insomnia, PTSD, and thoughts of harming and killing herself.

44. Emily has incurred, and will continue to incur, out-of-pocket economic damages for mental health therapy and other costs of physical and psychological care, and she has suffered, and will in the future suffer, destruction and impairment of her career and professional opportunities, and past, present and future lost income.

45. Emily's injuries and damages were caused by the negligence of Westover in the ways previously described and in the following ways:

   a. Westover employed a pedophile, and allowed that pedophile free reign to gratify his perverse sexual desires by molesting young vulnerable girls in the school's care and custody;

   b. Westover failed and refused to supervise, discipline, report or fire Fitzsimmons even though there was reasonable cause to believe that he was a child molester;

   c. Despite actual and constructive knowledge that Fitzsimmons was engaging in inappropriate sexual relationships with Emily and with other minor girls for a period of months and years, Westover failed and refused to prevent the abuse or to come to Emily's aid; and

        d.      Westover failed to warn Emily and her parents of the risk of harm to which she was subjected while attending the school.

46.      Westover owed Emily a duty of care, it breached that duty, its breach caused Emily to be repeatedly sexually assaulted, abused, and exploited, and Emily suffered damages as a result.

### IV.    Second Claim for Relief (Negligent Infliction of Emotional Distress):

1.      Paragraphs 1 through 46 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Second Claim for Relief.

2.      Westover created an unreasonable risk of causing Emily emotional distress.

3.      Emily suffered distress, and her distress was foreseeable.

4.      The emotional distress was severe enough that it might result in illness or bodily harm.

5.      Westover's conduct was the cause of Emily's distress.

### V.    Third Claim for Relief (Recklessness):

1.      Paragraphs 1 through 46 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Third Claim for Relief.

2.      Westover was consciously aware of the fact that it created a substantial risk to Emily.

3.      Notwithstanding Westover's conscious awareness of the risk to Emily, it failed to take necessary and appropriate steps to reduce or eliminate the risk and/or it

took affirmative steps to exacerbate the risk and to make harm and injury to Emily more likely.

4. The injuries suffered by Emily were caused by the reckless or callous indifference, or the wanton misconduct, of Westover.

**VI.    Fourth Claim for Relief (Intentional Infliction of Emotional Distress):**

1. Paragraphs 1 through 46 of the First Claim for Relief are hereby incorporated as Paragraph 1 of this Fourth Claim for Relief.

2. Westover knew or should have known that emotional distress was the likely result of its conduct.

3. Westover's conduct was extreme and outrageous.

4. Westover's conduct was the cause of Emily's distress.

5. The emotional distress sustained by Emily was severe.

## V. PRAYER FOR RELIEF

Wherefore, the plaintiff prays for the following relief:

1. Compensatory damages;

2. Punitive damages; and

3. Such other relief as the Court deems just and proper.

        PLAINTIFF EMILY MIRANDA

        BY s/Antonio Ponvert III
        ANTONIO PONVERT III ct 17516
        KOSKOFF, KOSKOFF & BIEDER, P.C.
        350 FAIRFIELD AVENUE
        BRIDGEPORT, CT 06604
        Tel: 203-336-4421
        (203)368-3244 (facsimile)
        aponvert@koskoff.com

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMILY MIRANDA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| V. | : | |
| WESTOVER SCHOOL, INC. | : | |
| Defendant. | : | JANUARY 28, 2020 |

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, the plaintiff demands a trial by jury on all issues.

THE PLAINTIFF

By /s/ Antonio Ponvert III
Antonio Ponvert III
Federal Bar No. ct 17516
Koskoff Koskoff & Bieder
350 Fairfield Avenue
Bridgeport, Connecticut 06604
TEL:  203-336-4421
FAX: 203-368-3244
Email: aponvert@koskoff.com